

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORPORATION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>THE BOEING COMPANY and LOCKHEED MARTIN CORPORATION,<br><br>　　　　Defendant(s). | CV 05-07533 FMC (MANx)<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

This matter is before the Court on Defendants' Motions to Dismiss (docket # 17, 23). The Court has reviewed the moving, opposition, and reply documents submitted in connection with these Motions. The matter was heard on February 13, 2006, at which time the parties were in receipt of the Court's tentative Order. At the conclusion of the hearing, the Court took the matter under submission, and now issues the following order granting Defendants' Motions and dismissing all claims.

# I. Background

## A. Nature of the Case

This action arises out of Defendants' alleged attempt to preclude competition in the provision of technology and services to the United States Government for portions of its space program. *See* FAC ¶ 1 (alleging that Defendants The Boeing Company ("Boeing") and Lockheed Martin Corporation ("Lockheed") "engaged in an unlawful conspiracy to eliminate competition in, and ultimately to monopolize, the government space launch business").

## B. Factual Allegations

In the First Amended Complaint ("FAC"), Plaintiff Space Exploration Technologies Corporation ("SpaceX") makes the following factual allegations:

In 1995, the United States Government began a multi-billion dollar space program involving "evolved expendable launch vehicles" ("EELV"). FAC ¶ 2. This program was to be administered by the United States Air Force ("USAF"), which would award contracts to companies to provide EELVs and related launch services. FAC ¶ 2.

On June 9, 1998, the USAF got a Justification and Approval ("J & A") to deal solely with Defendants with respect to EELVs and related services; at the time, Defendants were the only two companies capable of delivering these services. FAC ¶ 24. Since 1998, the USAF has awarded short-term contracts (one-to-three-year contracts) to both Defendants, attempting to ensure that the two would compete with each other. FAC ¶ 25. This practice also gave new EELV manufacturers the opportunity to compete for

2

contracts. FAC ¶ 25.

Beginning in 2000 and continuing through the present, Defendants made misrepresentations regarding the lack of commercial demand for EELVs. FAC ¶ 26. They collectively demanded additional funding to continue in the EELV business. FAC ¶ 26. They refused to deal with the USAF unless the USAF agreed to deal with them on common terms. FAC ¶ 5. The USAF renegotiated the contracts with Defendants "to provide government subsidies in the form of infrastructure sustainment payments." FAC ¶ 26. The USAF began paying these sustainment payments in fiscal year 2002. FAC ¶ 27.

On March 5, 2005, the USAF announced that it would issue a Request for Proposals ("RFP") for a third lot of EELVs (referred to as "the Buy 3 Launches"), and that the RFPs would probably be for a two-to-three-year period. FAC ¶ 28.

On March 17, 2005, an amendment was made to the J & A so that it covered the Buy 3 Launches. FAC ¶ 29. This meant that the contracts for the Buy 3 Launches would be awarded to Defendants on a non-competitive basis. FAC ¶ 29. At the time the J & A was amended, the USAF was aware that Defendants intended to merge their EELVs businesses into one joint venture to be known as the "United Launch Alliance," or "ULA." FAC ¶¶ 16, 29.

This amendment also approved "a restructured acquisition strategy that allow[ed] the [USAF] to issue non-competitive cost reimbursable contracts for infrastructure payments to [Defendants], plus non-competitive launch service contracts that could remain in place for five years or longer." FAC ¶ 30. The amendment permits the USAF to award to Defendants "non-

competitive cost reimbursement launch capability contracts on a sole-source basis to subsidize Defendants' fixed costs associated with their EELV business." FAC ¶ 32. This exclusive subsidy will help Defendants maintain their dominant marketing positions. FAC ¶ 32.

On April 6, 2005, the USAF issued an RFP for the Buy 3 EELV launch capability services exclusively to Defendants; the contracts would cover fully Defendants' infrastructure costs and other costs associated with the EELV business. FAC ¶ 35.

On April 21, 2005, the USAF issued an RFP exclusively to Defendants, stating that the performance period was to begin in fiscal year 2006 and continue through fiscal year 2011 or beyond. FAC ¶ 36. The RFP included a "mission allocation matrix" that shows that the USAF has already allocated all scheduled 23 launch missions to Defendants. FAC ¶ 36.

On August 15, 2005, SpaceX filed a protest with the Government Accounting Office ("GAO"). FAC ¶ 38. In response to the protest, the USAF modified the RFPs so that they "technically would appear to apply only to launches awarded in fiscal year 2006 for launch in 2008." FAC ¶ 38. However, the allocation of all the scheduled launches did not change. FAC ¶ 38.

Because significant advance preparations must be made for each launch, the significant commitment made by the USAF is the "allocation" of the launch rather than the awarding of the contract. FAC ¶ 39. The arrangement that Defendants have with the USAF ensures that they will be reimbursed for the preparations they make now for the launches that are outside the contract period but that have been "allocated" to them. FAC ¶ 39. This arrangement gives Defendants a competitive advantage in that

they will be able to develop their technological capabilities and will have the advantage of having government subsidies to cover the cost of developing their infrastructure. FAC ¶ 40.

In 2003, the United States Department of Justice ("DOJ") investigated Boeing's EELV-related activities. FAC ¶ 45. Specifically, the DOJ investigated allegations that Boeing had illegally obtained proprietary information about Lockheed's EELV program — Lockheed's confidential pricing data — during the 1996-1999 time frame. FAC ¶ 45. The USAF suspended Boeing from participating in the EELV program, and shifted $1 billion in contracts from Boeing to Lockheed. FAC ¶ 45. The suspension was lifted before the Buy 3 procurement process began. FAC ¶ 46.

The Defendants in this action have been on opposing sides in litigation surrounding the EELV program. Lockheed sued Boeing, alleging that Boeing attempted to lessen competition and monopolize the EELV business. FAC ¶ 50. One former USAF official pleaded guilty to charges that she "manipulated the procurement process to benefit Boeing." FAC ¶ 47. The CFO of Boeing pleaded guilty to a related charge. FAC ¶ 47. Boeing counterclaimed that Lockheed made false and misleading statements to the Government during the EELV procurement process. FAC ¶ 51. The Defendants settled that litigation upon the formation of their joint venture, ULA. FAC ¶ 56.

Today, these companies are "the only companies with contracts through the EELV program[,] the only companies [that are] being paid ... for EELV launch services[,] the only companies to have received infrastructure sustainment payments[,] and the only companies currently expected to receive launch capability subsidies ...." FAC ¶ 3. The GAO

recently concluded that the EELV program has cost overruns of $13.2 billion, which amounts to 70% of the original budget of $18.8 billion. FAC ¶ 52.

SpaceX has developed new technologies and a new business model that will allow it to reduce costs and increase reliability of launch vehicles. FAC ¶ 4. SpaceX is developing its own launch vehicles, which are expected to be ready by fiscal year 2007. FAC ¶¶ 4, 34.

C.  **Plaintiff's Claims**

Based on these factual allegations, SpaceX asserts antitrust and unfair business practices claims. Plaintiff also asserts claims based on violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 - 1968. Specifically, Plaintiff asserts the following claims: 1) violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (prohibiting "contract[s] and combination[s] . . . in restraint of trade); 2) violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (prohibiting monopolies and attempts to monopolize); 3) violation of § 7 of the Clayton Act, 15 U.S.C. § 18 (prohibiting the acquisition of stock or share capital where the effect of such acquisition may be substantially to lessen competition or tend to create a monopoly); 4) a violation of RICO, 18 U.S.C. § 1962(c) (prohibiting persons from being associated with any enterprise in order to participate in the enterprise's affairs through a pattern of racketeering activity); 5) a violation of RICO, 18 U.S.C. § 1962(d) (prohibiting conspiracies to commit substantive RICO violations); 6)-7) violations of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 (modeled after and prohibiting the same types of activities as the federal Sherman Act — restraint of trade and

monopolization); and 8) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.

### D. The Present Motions

Boeing moves to dismiss, arguing that SpaceX lacks Article III standing in that it does not have a viable launch vehicle at this time, and that therefore SpaceX has not suffered the requisite "injury-in-fact" necessary to establish standing to assert any of its claims. Boeing also argues that SpaceX has not met other claim-specific standing requirements, and that it has failed to allege facts regarding the essential elements of each claim for relief. Finally, Boeing argues that a specific request for declaratory relief — that the Court declare void the USAF procurement award — should be considered a "bid protest," which is subject to the exclusive jurisdiction of the Court of Federal Claims.

Lockheed also moves to dismiss, arguing that because SpaceX is not capable of providing the services the Government seeks to procure, it has not suffered an antitrust injury, and that therefore it has no standing to bring its Sherman Act or Cartwright Act antitrust claims. Lockheed also argues that SpaceX, as a competitor, cannot bring a Clayton Act claim. Lockheed also contends that the Noerr-Pennington doctrine precludes SpaceX's antitrust claims. Finally, Lockheed argues that SpaceX has not stated an unfair business practices claim because § 17200 requires an underlying violation of the law and all SpaceX's other claims are precluded.

In the end, the Court concludes that SpaceX has not alleged the requisite injury in fact to establish standing, and dismisses the FAC without prejudice.

## III. Standing and Ripeness

Although Boeing's Motion is captioned as one brought pursuant to Fed. R. Civ. P. 12(b)(6), because it challenges the Court's subject-matter jurisdiction, it is properly brought as a motion pursuant to Fed. R. Civ. P. 12(b)(1). The burden of establishing standing is on the party asserting jurisdiction. *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992).

Standing is a threshold requirement in every federal case; it is an integral component of subject matter jurisdiction. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541-43, 106 S. Ct. 1326, 1331- 32 (1986). *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975). It draws its roots from the Article III requirement that judicial power of the federal courts be limited to the adjudication of "cases" and "controversies." As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the controversy as to warrant his invocation of federal court jurisdiction. *Id.* Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

The Supreme Court has established that the "irreducible constitutional minimum" of standing contains three elements: (1) the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and

1 | (3) likelihood that the injury will be redressed by a favorable decision. *Lujan*,
2 | 504 U.S. at 560, 112 S.Ct. 2130.

3 | At issue in this case is whether SpaceX has suffered an injury-in-fact.
4 | To meet this requirement, a plaintiff must allege harm that is "distinct and
5 | palpable" rather than "abstract[,] conjectural[,] or hypothetical." *Idaho*
6 | *Conservation League v. Mumma*, 956 F.2d 1508, 1514 (9th Cir. 1992) (internal
7 | quotation marks and citation omitted). A plaintiff must "show that he
8 | personally has suffered some actual or threatened injury as a result of the
9 | putatively illegal conduct of the defendant." *Carson Harbor Village Ltd. v.*
10 | *City of Carson*, 37 F.3d 468, 475 (9th Cir. 1994) (internal quotation marks and
11 | citations omitted), *reversed on other grounds*, 104 F.3d 1133 (1997). The injury
12 | must be "real and immediate" rather than "conjectural or hypothetical." *Id.*
13 | (citation omitted). The mere possibility of future injury does not confer
14 | standing, and allegations that amount to nothing more than speculation
15 | regarding future injury are insufficient. *Gospel Missions of America v. City of*
16 | *Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003).

17 | Boeing argues that SpaceX has failed to allege an injury-in-fact and
18 | that SpaceX has not suffered an injury-in-fact because it does not yet have an
19 | EELV to offer.[1] Portions of Boeing's argument are dependent upon the
20 | preclusive effect of a Court of Federal Claims decision ("COFC decision")
21 | involving the current parties. *See Space Exploration Technologies Corporation*
22 | *v. United States, et al.*, 68 Fed. Cl. 1 (2005). The Court takes judicial notice of
23 | this decision, which is attached as Ex. A to Boeing's Request for Judicial
24 | Notice.

25 | Boeing's argument is based upon the application of the doctrine of

---

[1] As explained below, Boeing also argues that portions of SpaceX claims are not ripe.

9

collateral estoppel, also known as issue preclusion. An issue that is actually litigated and necessarily determined in a previous action is conclusive in subsequent suits involving the same parties. *Peck v. Commissioner*, 904 F.2d 525, 527 (9th Cir. 1990). SpaceX, Boeing, and Lockheed were all parties to the COFC action. The issues surrounding the existing contract were actually litigated and necessarily decided. *See generally* COFC decision, 68 Fed. Cl. 1 (2005). Accordingly, the Court gives preclusive effect to the issues surrounding the existing contract.

Boeing correctly contends that the COFC decision conclusively establishes that the current RFPs cover only launches awarded through fiscal year 2006, and that SpaceX will not be able to offer an EELV until at least 2007.[2] Therefore, as Boeing correctly argues, SpaceX cannot establish an injury-in-fact as to the contracts already awarded.

Boeing also correctly argues that SpaceX has not alleged any injury based on the award of infrastructure subsidy payments because, under the terms of the relevant RFP,[3] SpaceX was not eligible to bid; it did not have launch capability at the time of the RFP (April 6, 2005), and therefore was not a qualified bidder. *See* Boeing's Ex. B. In the absence of a right to bid, SpaceX cannot be said to have suffered an injury-in-fact.

SpaceX, which bears the burden of establishing that it has standing to pursue its claims, has failed to offer persuasive arguments that it has suffered the requisite injury-in-fact. SpaceX's allegations lack any reference to any specific type of injury suffered by SpaceX. SpaceX stated: "SpaceX has

---

[2] SpaceX so alleges in the FAC as well. FAC ¶ 34.

[3] The Court takes judicial notice of the RFP, attached as Ex. B. to Boeing's Request for Judicial Notice.

(a) suffered injury as a result of Defendants' conduct, (b) continues to suffer injury from Defendants' conduct, and (c) will suffer concrete injury in the future if Defendants' anticompetitive and unlawful conduct continues unabated." Opp at 3. SpaceX then refers the Court to FAC ¶¶ 6, 7, 11, 19-20, 39-40, 65-69, 75, 82, and 92 before summarily concluding: "SpaceX's allegations are more than sufficient to establish Article III standing; the FAC pleads concrete and particularized existing and imminent injury-in-fact that is proximately caused by, and directly traceable to, Defendants' unlawful conduct." Opp. at 4. SpaceX criticizes Boeing's argument as "ignor[ing] over a dozen particularized allegations" and notes that its allegations "extend[] well beyond [a] single contract." Opp. at 4. Then SpaceX states "that Defendants' conduct has caused and continues to cause SpaceX injury by excluding competition in the Government EELV market and distorting and harming current and future competition in the commercial EELV market," before reiterating its reliance on the paragraphs of the FAC cited above. Opp. at 4. Despite repeated conclusory and vague references to harm suffered, SpaceX's argument is utterly devoid of any concrete factual allegations regarding any type of actual injury suffered.[4]

---

[4] At the hearing on this matter, SpaceX argued that at least one of the antitrust laws upon which it bases its claims, § 7 of the Clayton Act, is "forward-looking and doesn't require actual past injury." Tr. at 18. Although under certain circumstances, injunctive relief is available to a plaintiff without actual past injury, an antitrust plaintiff is not relieved of the constitutional requirement that the threatened injury be "imminent." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992) (setting forth the requirement that injury be actual or imminent); *cf Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484 (1986) (permitting the fifth largest beef packer to seek injunction of prohibiting merger between second and third largest beef packers). Here, SpaceX's contention does not take into account that it is not yet in a position to compete with Defendants. Until it is, such a claim is unripe.

SpaceX's reference to specific paragraphs of the FAC does not give substance to its argument, nor do those portions of the FAC constitute a "dozen particularized allegations" that were "ignore[d]" by Boeing. Paragraphs 6 and 7 allege that Defendants have "corrupt[ed] the government procurement process for awarding EELV contracts" and eliminated "competitive bidding on the merits," but they do not explain the exact nature of the harm that has befallen SpaceX, which is not yet capable of providing EELVs or launch services. The conclusory reference in paragraph 7 that "SpaceX has suffered significant injury from Boeing's and Lockheed Martin's coordinated efforts to exclude [it] from competition" does not establish injury-in-fact.

Paragraph 11 merely introduces SpaceX and its claims and does not offer concrete allegations regarding harm actually suffered: "SpaceX seeks ... monetary relief to compensate SpaceX for the injuries it has already suffered as a direct result of Defendants' conduct."

Paragraph 19 discusses the effects of exclusion from the sale of EELVs to the USAF in the abstract and does not discuss harm suffered by SpaceX: "[Exclusion from the market] has the effect of making it extremely difficult, if not impossible, to develop the economies of scale necessary to compete ... in the sale of EELVs to other government agencies and commercial customers." SpaceX's conclusory statement of injury in paragraph 20 is insufficient to establish injury-in-fact: "SpaceX has been, and will continue to be, injured by this reduction in competition and its exclusion from the sale of EELVs to commercial customers."

The factual allegations set forth in the remaining paragraphs relied on by SpaceX, ¶¶ 39-40, 65-69, 75, 82, and 92, suffer another fundamental

12

problem: they present issues that are not ripe for adjudication.

"The standing question . . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 (1975). "If a plaintiff has not yet suffered a concrete injury-in-fact, he or she lacks standing, even though it is possible that in the future such injury will occur. Yet such a suit could also be said to suffer from a lack of ripeness because the circumstances have not yet developed to the point where the court can be assured that a live controversy exists." 15 Moore's Federal Practice, § 101.71 (3d ed. 2005). Such is the case here.

SpaceX, by its own allegation, is not yet ready to compete with Defendants in the EELV market. Because it lacks such readiness, its speculative claims regarding future harm are not ripe. In the remaining paragraphs cited by SpaceX, the repeated reference to harm to SpaceX's ability to compete in the EELV market cannot overcome SpaceX's allegation that that its launch vehicle will not be ready until 2007. *See* FAC ¶¶ 39-40 (addressing allocation of future scheduled launches); FAC ¶ 65 (Defendants' actions "have substantially and adversely affected competition. . . and have caused direct and significant injury to SpaceX."); ¶ 66 ("SpaceX has been injured directly by this reduction in competition and its exclusion from the market."); ¶ 67 ("Absent Defendants' conspiracy and anticompetitive conduct, SpaceX would be able to compete on the merits to obtain EELV launch contracts from the [USAF]."); ¶ 68 ("In free and fair competition, SpaceX would win at least a share of government EELV launches . . . ."); ¶ 69 ("Defendants' [anticompetitive acts] also have significantly injured competition in the sale of EELVs to commercial customers and have

13

damaged SpaceX's ability to compete for commercial customers."); ¶ 75 (Defendants' anticompetitive actions have "significantly injured the only current potential competitor to Defendants, SpaceX."); ¶ 82 ("Due to [Defendants' anticompetitive acts], Space X . . . has been directly and significantly injured by . . . the elimination of aggressive competition between Boeing and Lockheed Martin, . . . the exclusion from the U.S. Government market[,] and the exclusion from receiving taxpayer-financed infrastructure subsidies . . . ."); ¶ 92 ("SpaceX [has] been excluded from . . . participating in the EELV program, receiving launch contracts or allocations, and receiving important infrastructure subsidies from the U.S. Government."); *cf.* FAC ¶ 34 ("SpaceX will be ready to provide EELVs and EELV launch services by fiscal year 2007 . . . ."). These allegations fall short when measured (as they must be) in terms of whether they allege a "concrete and particularized" injury-in-fact that warrants immediate judicial intervention.

Moreover, the issues surrounding the "final allocation" of the launches are not ripe for adjudication. There are at least two such issues.

First, there is an issue of whether the USAF's preliminary allocation to Defendants will negatively impact on SpaceX. From the allegations of the FAC, it appears that SpaceX anticipates that the "allocation" of the launches to Defendants by the USAF ensures — or at least makes it more likely — that Defendants will win the "final allocation" of these launches. However, in proceedings before the COFC, the USAF represented that the RFPs had been amended to allow bidders to submit offers by launch and that no final allocations have been made for the time period in which SpaceX plans to have its own launch vehicle ready. COFC decision, 68 Fed. Cl. at 5 n.5

("The Air Force insists that no final allocation of launch operations for FY07 or later has been made and that plaintiff will be accorded every opportunity to compete for future contracts."). Therefore, at the current time, SpaceX's allegations that the USAF will at some time in the future act in a manner that is inconsistent with these expressed intentions is merely speculative. As such, it presents an issue that is not ripe for adjudication.

Second, as argued by SpaceX at the hearing, the infrastructure subsidies have the potential to place SpaceX at a competitive disadvantage in terms of pricing the launch vehicles. The argument is that Defendants have another source of funds (from the USAF) to cover their fixed costs, and therefore the price of the product — the launch vehicles — need not factor in those fixed costs; conversely, SpaceX, which does not receive the same subsidies to cover its fixed costs, would have no choice but to factor in those fixed costs when pricing its product. The logic of this argument cannot be faulted. As a matter of simple cost accounting, a for-profit business that does not factor fixed costs into the price of its goods can certainly offer a product at a lower price than a for-profit business that does not factor in those costs. This may be especially true in this case, where fixed costs appear to the Court to be very high.

A fundamental assumption underlying this argument is that the USAF will merely compare the price of the launch vehicles offered by the parties without factoring in the infrastructure subsidies. However, the expressed intention of the USAF is to take the subsidies into account. See COFC decision, 68 Fed. Cl. at 6 (noting that the USAF was "adamant" that the very infrastructure subsidies of which SpaceX complains "will not be held against new competitors."). Therefore, at the current time, SpaceX's allegations that

15

the USAF will at some time in the future act in a manner that is inconsistent with these expressed intentions is merely speculative. As such, it presents an issue that is not ripe for adjudication.

Accordingly, SpaceX lacks standing to assert claims related to contracts already awarded by the USAF.[5] Other claims asserted by SpaceX, those based on anticipated events, are unripe. Because this action presents no Article III case or controversy, and because the Court lacks subject-matter jurisdiction over it, SpaceX's claims are dismissed.

## IV. Leave to Amend

At the hearing, SpaceX asked for leave to amend the FAC. It does not appear to the Court that SpaceX will, at this time, be able to overcome the constitutional deficiencies that plague its claims. Nevertheless, the Court will be better able to make this determination upon review of a Second Amended Complaint. SpaceX may file a Second Amended Complaint within twenty days of the entry of this Order.

---

[5] At the hearing, SpaceX argued that the Court "seem[ed] to buy into defendants'... attempts to portray [its] case as nothing more than a bid protest." Tr. at 5. This is incorrect. Had the Court viewed this case in the manner suggested by SpaceX's argument, the Court would have simply dismissed the action as within the exclusive jurisdiction of the Court of Federal Claims. *See Emery Worldwide Airlines v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001).

In the present antitrust action, this Court is required to determine whether SpaceX has standing under Article III of the United States Constitution before turning to the merits of SpaceX's claims. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93, 118 S.Ct. 1003, 1012 (1998). In making that determination, the Court looks to whether SpaceX has suffered an injury-in-fact. The parties' business with the USAF is conducted through a governmental bidding process that awards contracts. Therefore, it is necessary to discuss past and present contracts in determining whether SpaceX has a justiciable claim at this time. As set forth at length in this Order, SpaceX does not.

## V. Conclusion

The Court grants the Motions to Dismiss. The FAC is dismissed without prejudice.

Dated: February 15, 2006

*Florence-Marie Cooper*
FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT

17