

FILED
CLERK US DISTRICT COURT

MAY 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

MAY 1 5 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SPACE EXPLORATION
TECHNOLOGIES
CORPORATION,

                Plaintiff,

vs.

THE BOEING COMPANY and
LOCKHEED MARTIN
CORPORATION,

                Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)

CV 05-07533 FMC (MANx)

**ORDER GRANTING MOTIONS
TO DISMISS**

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint for Lack of Jurisdiction and Failure to State a Claim (docket # 48, 50), filed April 6, 2006.  The Court has reviewed the moving, opposition, and reply documents submitted in connection with these Motions.  The Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 15, 2006, is removed from the Court's calendar.  For the reasons and in the manner set forth below, the Court hearby **GRANTS** the Motions to Dismiss.

//

//

57

# I. Background[1]

## A.   Nature of the Case

This action arises out of an alleged attempt by Defendants to preclude competition in the provision of satellite launch vehicles and services to the United States Government and commercial buyers. *See* SAC ¶ 2 (alleging that Defendants The Boeing Company ("Boeing") and Lockheed Martin Corporation ("Lockheed") "have acted unlawfully to use their market power and engaged in an unlawful conspiracy to monopolize and ultimately eliminate competition in the sale of medium to heavy satellite launch services to the U.S. Government... and to eliminate competition in the sale of satellite launch services to commercial buyers.")

## B.   Procedural History

In an Order issued February 15, 2006, the Court granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, with leave to amend, on grounds that Plaintiff had failed to establish that this Court has jurisdiction over the matter.  The Court found that Plaintiff failed to articulate an injury sufficient to satisfy Article III standing requirements. Plaintiff submitted a Second Amended Complaint on March 9, 2006.

## C.   Factual Allegations

Plaintiff Space Exploration Technologies Corporation ("SpaceX") outlined its factual allegations in its First Amended Complaint.  Plaintiff's Second Amended Complaint ("SAC") provides additional detail with regard

---

[1] The Court's previous Order (docket no. 41), issued on February 15, 2006, sets forth more fully the background of the current action.

1   to its original factual allegations, and offers the following in addition:

2      SpaceX has invested tens of millions of dollars in conceiving,

3   developing, and marketing satellite launch vehicles known as Evolved

4   Expendable Launch Vehicles ("EELV"). SAC ¶ 14. SpaceX's EELV-class

5   vehicle is known as the Falcon 9. *Id.*

6      In 2004, a U.S. government customer approached SpaceX and

7   requested that SpaceX expedite the development of its EELV-class Falcon 9

8   vehicle to accommodate that customer's imminent launch needs. SAC ¶ 41.

9   The U.S. government customer conducted more than a year's worth of due

10  diligence, investigating every relevant aspect of SpaceX's business, and

11  ultimately concluded that SpaceX is a qualified provider for the EELV-class

12  vehicle sought by that customer. *Id.* As a result, SpaceX secured a contract

13  worth more than $30 million from the U.S. government customer to launch

14  an EELV-class Falcon 9 vehicle in the summer of 2007. *Id.* In the launch

15  services industry, it is standard to execute launch contracts years in advance

16  of launch. SAC ¶ 14. Payments from customers also generally begin well in

17  advance of launch. *Id.* SpaceX has entered, and is a "full-fledged"

18  competitor, in the Government EELV-Class Market. *Id.*

19     SpaceX is a "full-fledged entrant" in the commercial EELV-Class

20  Market, as well. SAC ¶ 15. SpaceX recently completed an offer to NASA for

21  a Falcon 9 launch as part of an agency solicitation and, in addition, offered

22  its Falcon 9 to three additional commercial bidders to rely on the Falcon 9

23  launch vehicle as part of their own bids. *Id.* SpaceX has also offered its

24  Falcon 9 on the commercial market in response to a private commercial

25  launch opportunity. *Id.*

26     SpaceX was scheduled to launch an EELV-class vehicle in March

27

28                                          3

1  2006.[2]

2      To date, SpaceX has entered into launch vehicle contracts worth more

3  than $200 million with several committed customers, including the U.S.

4  Department of Defense, Defense Advanced Research Projects Agency

5  ("DARPA") and the U.S. Air Force ("USAF"), the government of Malaysia,

6  and several commercial customers. SAC ¶ 43. Prepayments from launch

7  customers now constitute a significant funding source for SpaceX. *Id.*

8      SpaceX is currently undergoing review for certification of compliance

9  with the International Standards Organization criteria for quality

10  management systems (known as "ISO 9001"). SAC ¶ 55. SpaceX expects to

11  receive final ISO 9001 certification in April 2006 and, upon such receipt,

12  intends to place the Falcon 9 in the standing NASA launch catalog. *Id.*

13      When the USAF EELV program began in 1995, neither Boeing nor

14  Lockheed had developed or ever launched an EELV-class launch vehicle.

15  SAC ¶ 59. Although the USAF began awarding EELV development

16  contracts in 1995 and awarded the first actual EELV launch contracts in

17  1998, neither Boeing nor Lockheed actually launched an EELV-class vehicle

18  until 2002. SAC ¶ 60.

19

20  **D.  Plaintiff's Claims**

21      Based on these factual allegations and the allegations articulated in

22  Plaintiff's FAC, SpaceX asserts antitrust and unfair business practices

23  claims. Plaintiff also asserts claims based on violations of the Racketeer

24  Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 -

25  1968. Specifically, Plaintiff asserts the following claims: 1) violation of § 1 of

26

27      [2]SpaceX's scheduled launch was not successful, as discussed *infra*.

28                                    4

the Sherman Act, 15 U.S.C. § 1 (prohibiting "contract[s] and combination[s] . . . in restraint of trade); 2)-3) violations of § 2 of the Sherman Act, 15 U.S.C. § 2 (prohibiting monopolies and attempts to monopolize) with regard to both the Government and Commercial EELV-Class Markets; 4) violation of § 7 of the Clayton Act, 15 U.S.C. § 18 (prohibiting the acquisition of stock or share capital where the effect of such acquisition may be substantially to lessen competition or tend to create a monopoly); 5) a violation of RICO, 18 U.S.C. § 1962(c) (prohibiting persons from being associated with any enterprise in order to participate in the enterprise's affairs through a pattern of racketeering activity); 6) a violation of RICO, 18 U.S.C. § 1962(d) (prohibiting conspiracies to commit substantive RICO violations); 7)-8) violations of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 (modeled after and prohibiting the same types of activities as the federal Sherman Act — restraint of trade and monopolization); and 9) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.

## E.    The Present Motions

Boeing moves to dismiss, arguing that SpaceX lacks Article III standing in that it does not have a viable launch vehicle to offer in the alleged space launch markets and that therefore SpaceX has not suffered the requisite "injury in fact" necessary to establish standing to assert any of its claims. Boeing also argues that SpaceX has not met other claim-specific standing requirements, and that it has failed to allege facts regarding the essential elements of each claim for relief. Finally, Boeing argues that a specific request for declaratory relief — that the Court declare void a USAF procurement award — should be considered a "bid protest," which is subject to the exclusive jurisdiction of the Court of Federal Claims.

Lockheed also moves to dismiss, arguing that SpaceX has failed to establish that it has Article III standing to bring its Sherman Act and Clayton Act claims.  Additionally, Lockheed argues that SpaceX's complaint fails to state a claim for relief under the Sherman Act because the Noerr-Pennington doctrine insulates Lockheed from antitrust liability for its alleged Sherman Act violations.  Lockheed argues that SpaceX lacks standing to bring its state law antitrust claims.  Finally, Lockheed argues SpaceX lacks standing and has failed to state a claim for relief under California's Unfair Competition Law.

## II. Standards for Dismissal

### A. Motions to Dismiss Pursuant to Rule 12(b)(1)

The present Motions to Dismiss require the Court to determine whether Plaintiff's Second Amended Complaint establishes that Plaintiff has standing to assert its claims.  Claims that are dismissed for lack of standing are dismissed for lack of subject-matter jurisdiction.  A motion to dismiss an action for lack of subject matter jurisdiction is properly brought under Fed. R. Civ. P. 12(b)(1).  The objection presented by this motion is that the Court has no authority to hear and decide the case.  The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### B. Motions to Dismiss Pursuant to Rule 12(b)(6)

The present Motions to Dismiss require the Court to determine whether Plaintiff's Second Amended Complaint states claims upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  The Court will not dismiss the claims unless Plaintiff cannot prove any set of facts in support of

the claims that would entitle it to relief. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the content of the Second Amended Complaint, the Court must take the allegations of material fact as true and construe them in the light most favorable to the Plaintiffs. *See Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

### III. Discussion

**A.     Standing**

Defendants' first argument in their Motions to Dismiss is that SpaceX does not have standing to assert its claims in federal court. The threshold jurisdictional question of standing stems from the "case or controversy" requirement of Article III. *See* U.S. Const., art. III, § 2. The three requirements to satisfy the "irreducible constitutional minimum" standard for standing are: (1) "injury in fact" to the plaintiff – an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) causation of that injury by the defendant's conduct – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court, and (3) redressability (a likelihood that the requested relief will redress that injury). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

In *Steel Co.*, the Supreme Court provides an extensive review of precedent in support of the rule that "Article III jurisdiction is always an

antecedent question" and discounts the practice some circuit courts had previously followed of assuming "hypothetical jurisdiction" and proceeding to the merits of at least some cases before jurisdictional issues were resolved. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-95, 101, 118 S.Ct. 1003 (1998) (explaining that courts tended to employ the practice where "(1) the merits question [was] more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied."). The Court concluded that "hypothetical jurisdiction produces nothing more than a hypothetical judgment–which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101 (citing *Muskrat v. U.S.*, 219 U.S. 346, 362, 31 S.Ct. 250, 256, 55 L.Ed. 246 (1911); *Hayburn's Case*, 2 Dall. 409 (1792)).

Accordingly, the threshold jurisdictional issue of Plaintiff's standing to pursue any antitrust, RICO, or California unfair competition claims must be resolved before this Court can proceed to the merits.

In the previous dismissal Order, the Court discussed a fundamental flaw that it perceived in SpaceX's First Amended Complaint – that SpaceX failed to allege the requisite injury-in-fact to establish standing. The Court noted that SpaceX conceded in its papers it was not yet ready to compete with Defendants in the EELV market. Based, in part, on this concession, the Court dismissed without prejudice SpaceX's claims for lack of standing.[3]

In its Second Amended Complaint, SpaceX expands upon and repackages the same allegations this Court previously dismissed for lack of subject matter jurisdiction. For example, in its First Amended Complaint,

---

[3]The Court stated it did not appear that SpaceX would "be able to overcome the constitutional deficiencies that plague its claims." Order, at 16.

SpaceX's claimed damages derived from its alleged exclusion from the USAF's EELV Program. Specifically, SpaceX alleged that its injuries stemmed from: (1) its exclusion from competing for the USAF's fiscal year 2006 ("FY06") Buy 3 EELV Launch Services ("ELS") and EELV Launch Capability ("ELC") contracts; (2) Defendants' past and future receipt of infrastructure sustainment payments pursuant to the USAF's EELV Program; and (3) the USAF's "pre-allocation" of EELV Program launches through FY11. The Court rejected each of these bases of injury when it dismissed the First Amended Complaint, finding that: (1) SpaceX, by its own admission, was incapable of competing for the FY06 ELS and ELC contracts[4] (Order at 10:11-13); (2) SpaceX lacked the capability to perform EELV launch services at the time the USAF issued the Buy 3 Request For Proposals ("RFP"), April 6, 2005, (*Id.* at 10:14-19); and (3) the FY06 Buy 3RFP covered only launches to be awarded through FY06 (*Id.* at 14:18-26).[5]

In its Second Amended Complaint, SpaceX alleges it would have competed in the Buy 3 RFP were it not for Defendants' anticompetitive

---

[4] In its previous Order, this Court took judicial notice of a decision by the U.S. Court of Federal Claims ("COFC") wherein that Court held that because SpaceX did not bid in the Buy 3 Request for Proposals ("RFP") it was precluded from contesting the award. (Order at 9:22-24). The Court relied on the COFC decision in its determination that because SpaceX did not bid in the Buy 3 RFP, it lacked standing to allege injuries stemming from that bid contest.

In its Second Amended Complaint, SpaceX argues that it has standing to claim injury stemming from the Buy 3 RFP because Defendants' unlawful conduct precluded SpaceX, or any other potential competitor, from competing in it. This argument is too speculative to support a claim of an alleged injury. Notwithstanding the COFC's decision that SpaceX cannot contest the Buy 3 RFP *because it did not bid*, SpaceX cannot contest the Buy 3 RFP *because it was not eligible to bid* at that time. SpaceX lacked the capability to perform EELV launch services at the time the USAF issued the Buy 3 RFP.

[5] The Court noted that SpaceX's contention that the USAF will act in a manner inconsistent with its expressed intention to provide SpaceX an opportunity to compete for future launch services contracts is speculative and not ripe for adjudication. *Id.* at 14:18 - 15:6.

9

conduct excluding SpaceX, and any other potential competitor, from competing. SAC ¶92. This allegation merely restates SpaceX's prior allegations. As the Court found in its previous Order, SpaceX could not compete in the Buy 3 RFP because it lacked the capability to perform EELV launch services at the time. Order, at 12:7-8. SpaceX has failed to identify a single contractual opportunity to provide an EELV-class launch vehicle or EELV launch capability services that SpaceX had the capability and was qualified to perform, and which SpaceX lost, or was excluded from competing for, as a result of Defendants' allegedly anticompetitive conduct.

SpaceX sets forth few new allegations in its Second Amended Complaint to support claims it has suffered an injury-in-fact. The new allegations provide a foundation for one argument, that because SpaceX is a competitor in the Government and Commercial EELV-Class Markets, Defendants' alleged unlawful extraction of "infrastructure sustainment payments" ("subsidies") from USAF for these products and services puts SpaceX at a competitive disadvantage.[6] SAC ¶¶ 7, 15, 41. This allegation fails to establish that SpaceX has Article III standing.

To support its contention that competitive disadvantage is a cognizable injury, SpaceX cites cases in which the Ninth Circuit held that a plaintiff suffering competitive disadvantage caused by a defendant's

---

[6]SpaceX cites several cases to support the argument that competitive disadvantage can constitute an injury for purposes of antitrust standing. *See* Pl.'s Consolidated Opposition to Motions to Dismiss ("Opp"), at p. 20. SpaceX cites a Supreme Court opinion that a finding of antitrust standing, as a matter of law, is sufficient to satisfy the standing requirements of Article III. *Id.* at 15 (*citing Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, *but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action*") (emphasis added)).

anticompetitive conduct suffered an injury-in-fact. Pl.'s Opp. at 20 (citing *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488 (9th Cir. 1996); *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988); *Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca*, 769 F.Supp. 1537, 1542 (N.D. Cal. 1991), *aff'd*, 64 F.3d 497 (9th Cir. 1995)). Each of the cases, however, involved competitors more equally situated than SpaceX and Defendants. In *Viceroy*, for example, the alleged competitive disadvantage was as between competing unionized and non-unionized mines. *See Viceroy*, 75 F.3d 482. In *Bullfrog Films*, the alleged competitive disadvantage was as between competing film makers, some of whose completed films had been approved for specific content under a federal regulation and some of whose completed films had not. *See Bullfrog Films*, 847 F.2d 502. In *Associated Builders*, the alleged competitive disadvantage was as between competing contractors, some of whom paid prevailing rates and some of whom did not. *See Associated Builders*, 769 F.Supp. 1537. All of the plaintiffs in these cases were competitors who had legitimate claims of competitive disadvantage.

The facts in the matter before the Court do not support SpaceX's claim that it is a "full-fledged" competitor in the EELV-Class Markets. *Id.* SpaceX has never successfully launched an EELV-class vehicle.[7] Both Boeing and Lockheed launched EELV-class vehicles in 2002, three years before SpaceX's entry into the market. SAC ¶ 60. SpaceX alleges that although the

---

[7]SpaceX was scheduled to launch an EELV-class vehicle in March 2006. SAC ¶ 49. The Court takes judicial notice, pursuant to Fed. R. Civ. P. 201(c), of a March 27, 2006, Wall Street Journal article, "Entrepreneur's Rocket Suffers Set Back During Maiden Launch," by Andy Pasztor, which describes SpaceX's failed launch attempt. The article was attached as Ex. 2 to Lockheed's Memorandum of Points and Authorities in Support of Defedant Lockheed Martin's Motion to Dismiss.

SpaceX's failure to launch an EELV-class vehicle does not preclude it from being considered a competitor but it is a relevant factor in the evaluation.

1   USAF began awarding EELV development contracts in 1995 and awarded

2   the first actual EELV launch contracts in 1998, neither Boeing nor

3   Lockheed actually launched an EELV-class vehicle until 2002. *Id.* It argues

4   SpaceX is eligible to compete for EELV contracts despite the fact it does not

5   yet have the capability to launch an EELV-class vehicle. SAC ¶ 92.

6   SpaceX's argument is unavailing. While it may be true that Boeing and

7   Lockheed received USAF launch contracts years before their first EELV

8   launches, the fact remains that both companies have since successfully

9   launched EELV-class vehicles. When Defendants were awarded the first

10   USAF EELV contracts, the market for these vehicles was brand new. It is

11   reasonable, in light of the fact that two competitors have launched EELV-

12   class vehicles successfully, that the USAF now requires that level of

13   capability from prospective bidders.

14         As further support for the argument that SpaceX is a "full-fledged"

15   Boeing and Lockheed competitor, it contends that the actual launch of a

16   vehicle is the final step of a multi-year customer engagement, not the

17   beginning of competition for that customer's business. Opp., at 22. It cites

18   its contract with a U.S. government customer, preparing for launch in

19   summer of 2007, as evidence it is a full-fledged competitor in the market.

20   SAC ¶ 41. Accordingly, SpaceX argues that despite its failure to launch an

21   EELV-class vehicle thus far, it can compete for at least some of the same

22   contracts as Boeing and Lockheed. SAC ¶ 92. These allegations fail to

23   establish that SpaceX is a "full-fledged" competitor of Boeing and Lockheed

24   in EELV-Class Markets. SpaceX's concession that the launch of a vehicle is

25   the final step of a multi-year customer engagement, combined with the fact

26   that SpaceX has not launched an EELV-class vehicle, indicates that SpaceX

27   has not completed even one launch contract, and is therefore not a "full-

28

1    fledged" competitor in the market.

2          SpaceX argues, in the alternative, that it need not be a "full-fledged"

3    competitor to assert antitrust claims, but that it has standing to bring its

4    claims as a "potential" competitor.  Pl.'s opp., at 23 (citing Andrx Pharms., Inc.

5    v. Biovail Corp. Intern., 256 F.3d 799, 806 (D.C. Cir. 2001) ("[A] 'competitor

6    that has not yet entered the market may also suffer injury' from exclusionary

7    conduct, so long as the 'potential competitor [can] demonstrate both its

8    intention to enter the market and its preparedness to do so.'")).  SpaceX

9    argues it is a "'serious potential competitor, distinguishable from the great

10   horde of opportunists who 'would've, could've, or might've.'"  Id. at 23 (citing

11   Amtrol, Inc. v. Vent-Rite Valve Corp., 646 F. Supp. 1168, 1177 (D.Mass. 1986)).

12   Although SpaceX has alleged many facts to show it is a "potential"

13   competitor in the EELV-Class Markets,[8] it nevertheless has failed to

14   articulate an injury sufficient to satisfy constitutional standing requirements.

15

16   **B.    Causation**

17         Regardless of whether SpaceX alleges it is a competitor or "potential"

18   competitor of Boeing and Lockheed, its claims of competitive disadvantage

19   fail because SpaceX has not shown that Defendants' conduct caused its

20   alleged injury.  As noted above, the second factor considered in an evaluation

21   of constitutional standing is whether the injury is traceable to the challenged

22   action of the defendant, and not the result of the independent action of some

23   third party.  Lujan, 504 U.S. 555.  Here, SpaceX alleges Defendants'

24

25         [8]SpaceX alleges it has invested "tens of millions of dollars in developing launch

26   vehicles," including the Falcon 9.  SAC ¶ 14.  It alleges it has "set up" a 300-acre test facility in
     McGregor, Texas, and has launch sites and control centers at Vandenberg Air Force Base and at

27   the U.S. Army Kwajalein Atoll/Ronald Reagan Ballistic Missile Test Site.  SAC ¶¶ 46, 48.

28                                          13

"unlawful conduct" caused SpaceX competitive disadvantage. The facts do not support this allegation.

All of the alleged injuries identified in the Second Amended Complaint and argued about in SpaceX's Opposition stem either from the USAF's FY06 Buy 3 EELV Launch Services procurement or from Defendants' receipt of subsidies. First, regardless of anything Defendants did or did not do prior to the FY06 procurement, SpaceX lacked the required experience to compete for the FY06 Buy 3 contract. Defendants' conduct did not cause SpaceX's ineligibility.

In an attempt to tie Defendants' conduct to its alleged injury, SpaceX alleges the USAF limited the FY06 RFP to Boeing and Lockheed as a result of a threatened boycott from the EELV program by those companies. SAC ¶ 9. It argues that the threat of a boycott under these circumstances constitutes "unawful activity" under the antitrust laws and that this "unlawful activity" ultimately precluded SpaceX from bidding in the FY06 RFP . Opp. at 32 (citing *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990)). Regardless of whether the allegations regarding the threatened boycott are true, Defendants' conduct had no impact on SpaceX's ability to compete in the FY06 RFP. SpaceX simply did not have the capability and experience required to compete. The allegations fail to show causation between Defendants' alleged conduct and SpaceX's alleged injury.

Second, SpaceX alleges Boeing and Lockheed misled the USAF about a downturn in the EELV-Class Market. SAC ¶ 10. It argues this alleged wrongful conduct led to "massive subsidies" paid to Defendants that gives them a competitive advantage in the government and commercial EELV markets. *Id*. Again, Defendants' conduct, whether anticompetitive or not, has not caused SpaceX any articulable injury. The fact that the USAF has

chosen to provide subsidies to the only two competitors it deems capable of providing EELV launch services at this time does not link any behavior by Defendants to any perceived competitive disadvantage of SpaceX.[9]

SpaceX's alleged injuries arise either from past awards for which it was not eligible to bid or future claims that are speculative and unripe. SpaceX has failed to identify a single contractual opportunity which it lost, or for which it was excluded from competing, as a result of Defendants' allegedly anticompetitive conduct. Furthermore, as a "potential" competitor who has never launched an EELV-class vehicle, and therefore has never, by its own admission, completed a launch services contract, SpaceX does not have standing to claim that Defendants' conduct caused it competitive disadvantage sufficient to satisfy the constitutional injury-in-fact requirement. SpaceX has failed to allege a concrete and particularized injury-in-fact. Accordingly, this Court lacks jurisdiction over its Second Amended Complaint.

## IV. Conclusion

The Court grants the Motions to Dismiss. The Second Amended Complaint is dismissed with prejudice.

Dated: May 11, 2006

FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT

---

[9] Moreover, because SpaceX has failed to identify a contract opportunity which it lost, or from which it was excluded from competing, as a result of the alleged competitive disadvantage, its claims regarding this alleged injury are speculative and unripe.